GASOLINE PRODUCTS CO., Inc., v. AMERICAN REFINING CO., Inc.

District Court, D. Delaware.    April 22, 1927.

No. 571.

Patents ⬲328—1,423,500, process for cracking petroleum, held valid and infringed.

Cross patent, No. 1,423,500, for process for cracking petroleum, *held* valid and infringed.

In Equity. Suit by the Gasoline Products Company, Inc., against the American Refining Company, Inc. Decree for complainant.

See, also, 12 F.(2d) 98.

Melville Church, of Washington, D. C., Ramsay Hoguet and Daniel L. Morris, both of New York City, Thomas E. Scofield, of Kansas City, Mo., and E. Ennalls Berl (of Ward, Gray & Ward), of Wilmington, Del., for plaintiff.

Frank S. Busser, of Philadelphia, Pa., Tarlton Morrow, of Wichita Falls, Tex., and William S. Hilles, of Wilmington, Del., for defendant.

MORRIS, District Judge. The patent, No. 1,423,500, whose validity, as well as its infringement by American Refining Company, Inc., the defendant, are here in question, was granted in 1922 to the plaintiff, Gasoline Products Company, Inc., assignee of Roy Cross the inventor. It relates to a process—oil cracking—in which, by the application of heat and pressure, the heavy complex hydrocarbons of petroleum oils are broken up into lighter hydrocarbons, gasoline and the like, to meet the demand for that fuel, too great, since about 1910, to be supplied by the older method of simple distillation or "topping."

As the art of cracking oil to produce gasoline did not originate with Cross, his patent is for a specific process. In claim 8— one of the three, 8, 10, and 14, stated to be typical of the claims of the patent, all of which are in suit—it is defined thus:

"A continuous process of treating petroleum oils without substantial distillation, consisting in passing the oils in a relatively small stream through a heating zone and raising the same to a cracking temperature, directing the oil therefrom to a relatively large insulated reacting chamber, and there maintaining the oil under sufficient pressure of evolved gases of the oil having a critical temperature below the cracking temperature of the bulk of the oil to prevent vaporization of the cracked hydrocarbons, introducing additional fresh oil to the heating zone, and drawing off the cracked liquid oil from the insulated reacting chamber without recirculation of the same through the heating zone, while maintaining the temperature and pressure condition substantially uniform."

In this process the continuous stream of fresh oil fed to the system passes through a coiled tube or pipe in a furnace in which it is raised to a cracking temperature, 700–800° F. From the tube it goes to a pool in a large insulated tank or reacting chamber outside the furnace. There, as in the pipe, the oil under treatment is maintained substantially in the liquid state or phase by the high pressure, approximately 750 pounds per square inch, of, mainly, the "evolved gases of the oil having a critical temperature [that at which a liquid is converted into gas regardless of the pressure] below the cracking temperature of the bulk of the oil." In the pool, which is at the cracking temperature, the oil tarries and is thus afforded time essential to enable it completely to react or crack. From the pool it flows out of the system without passing again through the heating coil. When removed from the tank, the bulk of the oil is in liquid form or phase.

The Cross process has unique advantages of economy and efficiency. It is continuous, yet it affords ample time for the cracking reaction to take place. By the cracking reaction, carbon is precipitated. It accumulates as a deposit in the reaction chamber. In processes in which the reaction chamber is in the heating zone, the deposit of carbon acts as an insulating material between the heat and the oil, and at the same time by retaining the heat causes the container or tank to burn out more rapidly, leak, and more or less frequently to discharge its contents in the fire, with dangerous or even fatal results. By his employment of a continuous, once-through, or nonrecirculating flow of oil passing in a small stream through the heating zone to a large reacting chamber outside the furnace, Cross lessened greatly the carbon difficulties and dangers of oil cracking. By carrying on the operation substantially in liquid phase, and thus minimizing vaporization and its chilling or endothermic effect, the maintenance of the required temperature in the cracking chamber, notwithstanding the location of that chamber outside the furnace, was made both feasible and economical.

Numerous patents and publications are cited by the defendant to establish anticipation and lack of invention. But the main reliance is placed upon British patent No. 25,510 of 1913, to Graeffe & Walther, British patent No. 18,419 of 1914, to Snelling,

Snelling's article published in the January, 1915, issue of the Bulletin of the American Institute of Mining Engineers, British patent No. 3,327 of 1915, to Marks, United States patent No. 1,203,312, to Walter M. Cross and the patent to Ellis No. 1,415,232. But in none do I find anticipation. It is true that the tube and tank and many of the steps of the process of the patent in suit are severally or in different combinations to be found in the prior art, but it does not appear that they were there employed to co-ordinate with one another in the same manner and relation as here. As combined by Cross they make a new process of great efficiency and one that has gone into widespread commercial use. That combination required, I think, to make it the talents and skill of an inventor.

The defendant began the use of the process employed by it under a license from the plaintiff. The license agreement was terminated, yet the defendant continued to practice the process used by it under the license. It is not denied that the process so used is the Cross commercial process. The defendant asserts, however, that the commercial process is not the patented process, and, consequently, that it does not infringe. This issue has been made to turn, primarily, upon the scope of the claims—whether they are broad enough to include a process in which the bulk of the material under treatment reacts and passes out of the reacting chamber in liquid phase, or whether, on the other hand, they are limited to a process in which the bulk of the gasoline as distinguished from the bulk of the material under treatment must at all times remain in liquid phase. The patentee expressly distinguishes his process, not from other liquid phase processes, but from "the many distillation processes for cracking oil, in which the light hydrocarbons are removed from the cracking zone in the form of vapors." Nowhere does he specify that there shall be no vaporization. On the contrary, it is conceded that there is some, and that there must be some to effectuate his process. As I read the specification, all that he requires is that the reaction take place "substantially in the liquid phase," and that there shall be no "substantial distillation." Giving to the claims the narrow construction pressed by the defendant would, I think, place restrictions upon the patent not required by the specification or by the prior art. The defendant's practice is within the scope of the claims as thus construed.

In my opinion, the plaintiff is entitled to the decree it seeks.